```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA,

                    Plaintiff,              MEMORANDUM & ORDER
     -against-                               FINDINGS OF FACT &
                                             CONCLUSIONS OF LAW
FELIX ANTONIO PUELLO, et al.,                Civil Action No. 92-5040

                    Defendants.
----------------------------------------------------X
```

**For Plaintiff:**
**ROBERT L. CAPERS**
United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
By:   Vincent Lipari, A.U.S.A.

**For Defendants:**
**Law Offices of Michael P. Berkley, P.C.**
585 Stewart Avenue, Suite 306
Garden City, NY 11530
By:   Michael P. Berkley, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

The United States commenced this action in October 1992 asserting claims for civil forfeiture, False Claims Act, payment under mistake of fact, common law fraud and unjust enrichment. According to the complaint, Puello Meat and Provisions Co. Inc. ("Puello Meat"), a corporation controlled by defendant Felix Puello ("Puello"), was a meat wholesaler. As a wholesaler, Puello Meat was not authorized to accept or redeem food stamps. Nonetheless, from approximately May 1990 through February 1992 Puello Meat accepted, and redeemed through Pueblo Meat Market ("Pueblo Market"), also controlled by Puello, approximately $40 million in

food stamps; each redemption was accompanied by a certificate signed by Puello certifying the food coupons were redeemed in accordance with the Food Stamp Program Regulations.

Presently before the Court is defendants'[1] motion for reconsideration of this Court's January 15, 2002 Memorandum and Order which determined that the Eighth Amendment to the Constitution does not bar an award of compensatory damages on the common law causes of action.[2] In addition, contained herein are the Court's finding of facts and conclusions of law on the outstanding claims, to wit, damages on the claim for payment under mistake of fact and liability and damages on the claims for fraud and unjust enrichment.

## BACKGROUND

### I. The Motion for Summary Judgment

After finding that certain vehicles and other properties were subject to forfeiture, a Judgment, Decree of Forfeiture and Order of Delivery was signed as those assets in July 1, 1996. As a result, the issue of the monies fraudulently received and retained by defendants remained. By Memorandum and Order dated January 15, 2002 the Court granted partial summary judgment on liability on the payment under mistake of fact claim in view of Puello's guilty plea to the charge of unlawfully presenting and causing to be presented for payment and redemption food stamp coupons in violation of 7 U.S.C. § 2024(c). The Court found that a factual dispute as to the net dollar amount defendants owed to the Government precluded summary judgment as to damages. Rejected by the Court were defendants' arguments that the granting of a money

---

[1] Puello, Puello Meat and Pueblo Market are collectively referred to as "defendants."

[2] While defendants also argue that an award under the False Claims Act would violate the Eighth Amendment, plaintiff has withdrawn its cause of action under the False Claims Act.

judgment would violate the Eighth Amendment and that the mistake of fact cause of action was flawed due the absence of evidence that the Government's redemption of the food stamps at issue were based on a belief that was material to its decision to pay.

## II. The Trial and Post Trial Proceedings

In September 2002, a trial of this action took place. The issues tried included the amount of damages on the claim for payment under mistake of fact and liability and damages on the claims under the False Claims Act ("FCA"), common law fraud and unjust enrichment. When defendants again raised the argument in their post trial submissions that the relief sought violated the U.S. Constitution's Eighth Amendment, the Court directed the Government to address that issue. The Court also observed that given Puello's apparent financial circumstances "[i]t may be that the Eighth Amendment issue as to civil penalties and treble damages would be better addressed in a case in which there is a more realistic chance of recovering a significant portion of the monies sought."

## III. The Administrative Closing of the Case

In order to make an informed decision regarding the continuation of its FCA claims, the Government made several applications for additional time to conduct discovery as to defendants' financial situation and to file its reply brief. The last such application was made on September 17, 2003. The Court granted that application by Order dated September 17, 2003 and, without prompting by the parties, further ordered that "[t]he Clerk of Court is directed to ADMINISTRATIVELY CLOSE this case. The parties may reopen this case, via joint letter application after the new October 31, 2003, date for conclusion of discovery." (Capitalization in original).

An application to reopen the case was made by plaintiff on March 18, 2015, which application was granted, over defendants' objection, by Order dated June 15, 2015. The parties agreed to a briefing schedule for the motion for reconsideration and post-trial submissions. The matter is now ripe for decision on the following issues that remain for the Court's consideration: reconsideration of the Eighth Amendment issue, liability and damages on the United States' fraud and unjust enrichment claims, and damages on the payment under mistake of fact claim. The United States has withdrawn its claim under the False Claims Act.

## DISCUSSION

The Court will first address defendants' motion for reconsideration of its Eighth Amendment defense pursuant to Local Rule 6.3. It will then proceed to make its findings of fact and conclusion of law.

**I.     Reconsideration of Eighth Amendment Defense**

    **A.     Standard for Motion for Reconsideration**

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' "

*Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

As it existed in 2002, Local Civil Rule 6.3 provided that a motion for reconsideration or reargument must be made within ten (10) days of entry of the Court's determination of the original motion.

**B.** **Application to the Present Case**

The application for reconsideration is untimely having been filed on September 20, 2002, (DE 99), more than eight months after the Court's January 15, 2002 decision. On that basis alone, the motion may be denied. Given the circumstances of this case, the Court will nevertheless address the motion.

The asserted basis for the motion for reconsideration is as follows: "This reargument request is based upon a controlling decision which . . . may have been overlooked by the Court as a result of the fact that the motion was fully submitted prior to the decision of the U.S. Supreme Court in the matter of *U.S. v. Bajakajian*, 524 U.S. 321 (1998)." Berkley Aff. (DE 101) at ¶ 2. According to defendants, *Bajakajian* makes clear that a judgment even based upon common law would violate the Eighth Amendment, if it is excessive, "notwithstanding the fact that *Bajakajian* and other cases were based on statutory forfeitures." Defs.'s Mem. (DE 100) at p. 17.

The proceeding in *Bajakajian* that triggered the Excessive Fines clause was a criminal prosecution for failing to report the transporting of more then $10,000 out of the United States

and the forfeiture of monies in excess of $357,000 as *punishment* for that offense. 524. U.S. at 326. Nothing in *Bajakajian* or its progeny require a re-examination of this Court's conclusion that the relief sought by the United States "is purely remedial absent any punishment component implicating the Eighth Amendment or otherwise." Mem. & Order dated January 15, 2002 at p.13.

The motion for reconsideration is denied.

II.     **Findings of Fact and Conclusions of Law**

   A.     **Findings of Fact**

   1. At all relevant times, Puello owned and /or controlled Puello Meats and Pueblo Market. Joint Pre-Trial Order ("JPTO") at Stipulated Fact 3.

   2. Puello Meats was a wholesaler of meats. JPTO at Stipulated Fact 5.

   3. Wholesalers were not authorized to accept food stamps in exchange for their wholesale transactions as during the relevant period (May 1990 to March 1992) and were not permitted to participate in the food stamp program. JPTO at Stipulated Facts 4, 5; Trial Tr. at 24-25; 7 U.S.C. §§ 2011-2036; 7 C.F.R. Parts 271-85.

   4. Pueblo Market, a purported retail business, submitted an application for authorization to accept food stamps and its application was approved in April 1990. JPTO at Stipulated Fact 6; Trial Tr. at 26; Gov't Ex. 30.

   5. During the period May 1990 to March 1992, Puello and Puello Meats knowingly accepted food stamps in exchange for wholesale transactions. JPTO at Stipulated Fact 7; Trial Tr. 80-81 (excerpt from Puello's plea allocution in his criminal case).

   6. Puello knew that accepting food stamps in exchange for wholesale transactions was

contrary to law. Trial Tr. 80-81, 90.

7. Puello then used Pueblo Market to redeem the food stamps collected by Puello Meats. JPTO at Stipulated Facts 9, 10.

8. After accepting food stamps, an authorized retailer deposits the stamps into a bank account. With each deposit the retailer must file a certification declaring that the food stamps being redeemed were accepted in accordance with the regulations of the Food Stamp Program. Trial Tr. at 19-20. Banks are instructed not to accept food stamp deposits in the absence of a signed redemption certificate. Trial Tr. at 20.

9. With each deposit of food stamps into the account of Pueblo Market, Puello filed a redemption certificate certifying that "the food coupons redeemed were accepted in accordance with Food Stamp Regulations" knowing that the redemption certificate was false. JPTO at Stipulated Fact 11; Trial Tr. at 80-81, 90.

10. The food stamps deposited into the account of Pueblo Market were, in fact, acquired through wholesale transactions of Puello Meats. JPTO at Stipulated Fact 9; Trial Tr. at 80-81.

11. During the period May 1990 to March 1992, Pueblo Market deposited 515 redemption certifications, signed by Puello, with food stamps totaling $40,826,079.00, and relying on those certifications the Food and Nutrition Service of the United States Department of Agriculture redeemed said certificates by depositing $40,826,079.00 into accounts maintained in the name of Puello Meats at Manufacturers Hanover Trust Bank. JPTO at Stipulated Fact 8; Trial Tr. 58-60, 80-81; Gov't Ex. 24.

12. Plaintiff recouped $1,364,000.00 through civil forfeiture. Trial Tr. 95-107.

**B. Conclusions of Law**

1. Plaintiff is entitled to recover $39,462,079 on the cause of action for payment under mistake of fact (representing the $40,826,079.00 deposited into the accounts of Puello Meats less the $1,364,000.00 recouped through civil forfeiture).

2. The elements of a cause of action for fraud are "a representation of material fact, falsity, scienter, reliance, and injury." *See, e.g., Pasternack v. Laboratory Corporation of America Holdings*, 807 F.3d 14, 22 (2d Cir. 2015). Plaintiff has sustained its burden of proof on its fraud cause of action.

The material representation of facts were the statements on the 515 redemption certificates that "the food coupons redeemed were accepted in accordance with Food Stamp Regulations." These representations were material as without the signed certification a bank would not accept the food stamps for redemption and were false in that Defendants' redemptions were not in accordance with the regulations as the food stamps were accepted for wholesale transactions. Defendants knew these statements were false as Puello admitted in his plea allocution. In making these representations, defendants expected that the United States would rely on them and pay the redemption amount. The United States was injured when in fact it paid those amounts.

3. "[T]he measure of damages for fraud is governed by the 'out of pocket' rule which permits recovery for a plaintiff's reliance interest . . . ." *Schoenfeld v. Hilliard*, 218 F.3d 164, 183 (2d Cir. 2000) (internal quotations omitted). The United States is out of pocket in the amount of $40,826,079, less an offset of $1,364,000.00, for a total of $39,462,079.00.

4. The United States is entitled to recover $39,462,079.00 on its common law fraud

cause of action.

5. A claim for unjust enrichment lies where a defendant is in possession of money or property which in good conscience and justice he should not retain. "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Di Simone v. CN Plumbing, Inc.*, 2014 WL 1281728, at *5 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted).

Here, defendants received reimbursement from the government to which they were not entitled and were thereby enriched at the expense of the government. That, according to Puello, "[h]e did not steal the stamps, nor did he profit by buying stamps at a discount" but rather "merely acted without the proper license," Defs.'s Post-trial Brief at 15, does not change that conclusion. Defendants were not entitled to redeem food stamps and because they did, they were unjustly enriched. That defendants may no longer be in possession of the funds they wrongly received, the funds having allegedly been used to run their business, impacts collectability of a judgment and not the propriety of the government's claim.

6. The United States is entitled to recover $39,462,079.00 on its cause of action for unjust enrichment.

7. Puello's trial testimony regarding alleged misconduct by an agent of the Office of the Inspector General of the United States Department of Agriculture does not bar the United States' recovery.[3]

---

[3] In his reply papers, Puello submitted an affidavit asserting details about the alleged misconduct of this agent that were not in his trial testimony. As no request to supplement the trial record was made and as the government has not had an opportunity to cross-examine Puello

Puello's guilty plea constitutes an estoppel in favor of the government in this civil case as to those matters determined by the judgment in the criminal case, *see United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978), and the allegation of misconduct by an agent of the Office of the Inspector General were never raised in the criminal proceeding.

Even apart from the guilty plea and assuming *arguendo* there is some validity to these allegations, they do not defeat the government's claims.

"When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of a citizenry as a whole in obedience to the rule of law is undermined. It is for this reasons that is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51 (1984). At the very least, the traditional elements of estoppel must be present, to wit: " the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' " and "that reliance must have been reasonable." *Id*. at 59-61. Here, there was no reasonable reliance given Puello's admission that he and Puello Meats accepted food stamps for wholesale transactions knowing that wholesalers were not eligible to participate in the redemption program. Also, the following testimony evidences Puello's understanding that the "advise" of the agent was contrary to law: "I said that I could get caught, I could get into trouble for this. He said, if you get into any kind of trouble, just invite a lot of your friends over to make a video of people buying at your place of retail." Trial Tr. at 90.

This same testimony precludes imputing this agent's knowledge of Puello's scheme to

---

as to these asserted details, they need not be considered by the Court.

the Government. The agency principle that the misconduct of an agent within the scope of his agency will be imputed to the principle is based "on the presumption that the agent will normally discharge his duty to disclose to his principal all the material facts coming to his knowledge with reference to the subject of his agency, and thus any misconduct engaged in by [the agent] is with—at least—his principle's tacit consent." *In re CBI Holding Co.*, 529 F.3d 432, 448 (2d Cir. 2008) (internal quotations omitted) However, such knowledge is not imputed to the principal "when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, [as] he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Id.* (internal quotations omitted). By advising Puello on how to avoid "trouble," this agent engaged in a scheme to defraud the government and therefore his knowledge is not imputed to the United States.

The cases relied on by defendants do not preclude the government's recovery in this case. In *United States ex rel. Weinstein v. Bressler*, 160 F.2d 403, 405 (2d Cir. 1947), the Court held that summary judgment was properly granted on a claim under the Informer's Act, 31 U.S.C. §§ 231-235, an element of which is fraud, where there was no implied representation that defendant had not illegally conspired to exclude competition. Here, there is no need to imply a misrepresentation; an actual misrepresentation was knowingly made on each of the redemption certificates. In *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321 (1995) the question was whether the extent and nature of the government's knowledge was sufficient to show that the defendant did not knowingly submit false claims in connection with the testing of pilots' radios. Here, there is no question that Puello knew he was making a false misrepresentation each time he submitted a reimbursement certification as evidence by his plea

in the criminal case and his testimony in this case that during his conversation with the agent he (Puello) stated he could get in trouble.

8. Although the United States has satisfied its burden of proof on all three causes of action, it can only recover once for the same injury and therefore judgment will be entered in favor of the government and against Puello, Puello Meats and Pueblo Market in the amount of $39,462,079.00.

## CONCLUSION

For the reasons set forth above, the Clerk of Court is directed to enter judgment in favor of the United States and against Felix Antonio Puello, Puello Meats and Provisions Company, Inc. and Pueblo Meat Market, Inc., jointly and severally, in the amount of $39,462,079.00 and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York  
      February 18, 2016

s/   Denis R. Hurley  
Denis R. Hurley  
United States District Judge